Good morning, your honors. My name is Deanna Dotson. On behalf of Mr. Ulibas, the appellant, First of all, Mr. Ulibas did sign a plea agreement and waived his rights to appeal. So the first issue, we need to overcome that waiver of his appellate rights. And I believe that Mr. Ulibas has several factors on which he can show that this was not a knowing and voluntary waiver. First of all, the plea agreement in and of itself is a contract. And if we look at it under contract terms, there really was no valid consideration. The government offered to reduce the indictment by a superseding information. The indictment charged for 50 grams of methamphetamine with a 10-year mandatory minimum. In exchange for the plea agreement, they were going to offer a superseding information and reduce that to five grams with a mandatory minimum of five years. And that was the understanding of Mr. Ulibas, that he was going down to a five-year level. Also, the government said, well, in addition, we will not charge you under the gun 924C for having guns. And the contention of Mr. Ulibas is that that was an illusory consideration because he couldn't have been charged anyway. So if you're giving something that you have no right to give, then, in essence, that's not good consideration. And if you look at the fact He was exposed to the risk of the firearm counts if the government had proceeded. Perhaps the government could not have convicted him, but had they proceeded to charge them, he would have been faced with the risk of the firearm counts. Isn't that consideration? Just avoiding the risk? Well, I think still, in order to have something in an indictment, you have to be able to support that with some evidence and elements that you're able to prove. And they wouldn't have been able to prove the elements required for a 924. They did get an enhancement on the sentence for having guns in possession, but not for the charge of a 924C. That requires additional proof that they needed to show. But this isn't a question of sufficiency of the evidence. It's a question of consideration. And it doesn't take very much to be consideration. I think we all learned in law school, the old saw that a peppercorn can be consideration if that's what the parties bargained for. That's correct. But however, the consideration has to be real. It can't be something that's not available. And the 924C would not have been available because they did not have the necessary elements that they needed to put in, even in an indictment. They would have to show where they had certain information to prove the elements before, in order to charge for the 924C. So in other words, that was something they could not even charge on because the information and the evidence wasn't there to support that. And there's no meeting of the minds. There was no mutual assent. If Mr. Ulibas was thinking of a five-year, but on the other hand, the government was thinking still 10-year and arguing for the 10-year. And in fact, even in the plea agreement, they said, well, we're still going to go ahead and argue for this 10-year and for the additional amount of drugs that were found. And Mr. Ulibas did not admit to those drugs being his. So therefore, they weren't thinking on the same amount. So if they aren't thinking about the same thing, it's the same thing as the peerless case way back in contract law about meeting of the minds. They were thinking on two different things. So we didn't have mutual assent on that part. We can also look at the fact that there was not a Rule 11 compliance with this particular case. When the defendant was addressed in court concerning his plea agreement, the new rules according to Rule 11 and making sure that he understood about his waiver of his right to appeal, those were not addressed. There was a question of the language difficulty. Even though there was an interpreter available at the plea agreement hearing, but not at sentencing, the interpreter was not used and Mr. Ulibas was not asked specifically, do you want to waive your right to use the interpreter? It is a contention that he really did not understand English to that extent that he understood fully what he was giving up. He understood, I believe, that looking at, gee, I'm going from a 10-year to a 5-year and I agree with that because that's good and that's the amount of drugs I agree that I did have. However, I don't think he understood that there was a possibility and what the government was arguing about as far as being able to go forward with more than the 5 years and going after at least the 10 years. In fact, the government argued for 11 years at sentencing hearing. If, in fact, he's able to overcome this waiver, then there's the issue of the knock and announce. Before I go on, I not the knock and announce was proper. There was a dispute on the time, whether or not it was an immediate or whether it was a 5-second wait before knocking and before entering. Even if it was still the 5-second, they would have to prove that there were the circumstances such that would allow the 5-second and as far as I could go on, there weren't any cases that said that 5 seconds was a sufficient time in order to enter a private residence. And with this in mind, the motion that was brought in order to suppress the evidence on this knock and announce was denied and this is what is on appeal within this particular appeal, that there were not the circumstances. Even if the court finds that the appeal rights were waived and the appeal is not prohibited when the sentence was not according to what the plea agreement. And again, I'd like to reiterate that the plea agreement, by the understanding of Mr. Ulavez, was a 5-year mandatory minimum, not the 10. And so therefore, it was his understanding that that's what he was pleading to and that's what he was agreeing to. Well, now as it developed, at the time of sentencing, there was really not a great deal of contest on the part of the defendant about the quantity, am I right? No, there wasn't. He reserved the right during the course of his plea to challenge the quantity that found in the bathroom? Correct. But when it come time for sentencing, he really didn't offer much of a challenge, did he? He did not offer a challenge, but he did not admit to that. But he didn't offer a challenge because of the obstruction of justice. And I believe it was probably on counsel's advice at that point that if he objected, then he would also be up for obstruction of justice if the court found indeed that that was in. But there's nothing like that in the record, that he ever said, well, I concede or I don't challenge because I'm afraid of being accused of obstruction? There's nothing in the record to that effect, is there? I do not recall if that exact way it was presented. However, it was presented to the court that if he does argue that he will be, and there was an that should be. And of course, the court denied that because it was questionable whether or not it was him and whether he purposely flushed the drugs down and whether it was him that did that. I guess what I'm getting at is you want to effectively have this court say not only is the waiver ineffective, but the whole plea is ineffective. Correct. And he wants to go back and litigate whether or not he was in possession of enough drugs to subject him to the mandatory minimum, which is equal to what he is sentenced to anyway, and challenge the government to go ahead and make the gun charge and duke it out. Is that? No, your honor. I believe that if that it should go back to what the original plea would be and what he agreed and what he pled to was the amount of drugs. So you're you're asking that the court say the plea is OK, but the waiver is no good. No, I'm saying that his waiver, the plea agreement would not be valid because. So he'd be before the court with his not guilty plea. Correct. He could go back and say not guilty. And then we already said not guilty until his valid plea of guilty is entered. And if the plea if there's something wrong with this plea, his plea of guilty is no good and his waiver is no good. Right. We cannot we cannot say that the waiver is no good, but the plea is OK. Can we and then say, well, now you get the benefit of what you think the bargain is. And the government is foreclosed from making any further charges. Now, if you go back, if you prevail here and if you're right, you're going back and you're going to say to the government, we stand on our not guilty plea to this indictment and you go ahead and indict us and convict us if you think you can. That's where we are. Possibly, yes. However, we have to look at the other issue where the knock and announce the amount of drugs that were recovered on the knock and announce. You have to be and that is right in the trial court. That's correct, Your Honor. And that's what you want a chance to be right. Correct, Your Honor. OK, thank you. Thank you. We'll hear from the government. Please, the court, if I may address the appellate waiver issue first and the plea agreement itself. As defendant originally stood charged in this case, the primary charge was possession with intent to distribute 50 grams or more of methamphetamine. That gave rise to a mandatory 10 offense under the relevance Title 21 statute. That meant that no matter what defendant may have done, if he was convicted, he was looking at a mandatory 10. Whatever sentencing reductions could have been available to the defendant under the guidelines would not have reduced his guideline sentencing level below the mandatory 10. So what defendant was doing at the time of the plea was looking for some mechanism by which he could have the sentence, making use of the guidelines, he could have the sentence reduced. This is what was hoped to be accomplished in the memorandum of plea agreement. The United States agreed that we would file a superseding information which charged defendant with possession with intent to distribute 5 grams or more of methamphetamine in addition to the other charges. But they're not really relevant for purpose of this appeal. That charge now only alleged a mandatory 5 offense, which is to say that if defendant was able to get his entitlements under the guidelines, principally the one for acceptance of responsibility, the full three points, then he could be looking, and he ultimately did, he could be looking at a guideline sentencing range of less than 10 years. And the guideline sentencing range that he would have been looking at was, I believe, 108, which is 9 years, to slightly over approximately 11 years. And that was the range he was looking for. And I think that is important for what is being understood in this case. What defendant wanted in the plea agreement was the opportunity to have a sentence less than the mandatory minimum 10 years. It didn't guarantee the defendant anything. There is nothing in the plea agreement that guarantees any particular sentence. And the defendant knew full well that the United States would be seeking a sentence under the guidelines in excess of 10 years. But nevertheless, he had the opportunity to argue for a sentence of less than 10 years. Because what defendant wanted to do, among other things, is to preserve his right at sentencing to contest the methamphetamine which was found in the bathroom toilet, which we allege that he had flushed down in an effort to destroy. Defendant admitted to all the methamphetamine that was found in his room that gave rise. And that's what he wanted to be sentenced on. If he had prevailed on this particular argument, if he had been able to prevail before Judge Ezra that that methamphetamine in the toilet bowl was not mine, his sentence would have been considerably less in the range of, I believe, 7 to 8 years. The numbers are in my answering brief. And so that's what he was looking for, and that was significant. But the defendant knew at the time of plea two that the United States would be seeking not only to have him responsible for the methamphetamine found in the toilet bowl, but in addition, we were also seeking a determination that his attempt to destroy evidence by throwing it in the toilet bowl constituted an obstruction of justice. And if we had prevailed on that, defendant's sentence would have been in excess of 10 years. So he knew that as of the time of the plea, and that was incorporated into the plea agreement. Now, what happened later on is that the United States was prepared to have a full-scale sentencing hearing with respect to the methamphetamine found in the toilet. So we filed a proffer. We filed declarations of all the Hawaii County Police Department officers involved in the search, and that ultimately was filed with the court, served on the defendant, and as it turned out, some eight months ensued between the time of our filing of our written proffer and the defendant's ultimate sentencing. At the time of sentencing, defendant therefore had a great opportunity to see what the evidence the United States would be presenting, and therefore made the calculated decision not to contest that. And did not at sentencing. The only issue, therefore, at sentencing was whether defendant should be found responsible for obstruction of justice for destruction of evidence. Of course, there's that requirement of a material hindrance of the case, and the district court found that it did not materially hinder the case because we were able to recover most of it. So defendant did, in fact, look at a guideline sentencing range of below 10 years, which is what he wanted. But we made the argument, and the court agreed with us, that as a matter of discretion, because defendant attempted to destroy evidence, he should not get the lower end of the guideline range. We sought the high end, the court said 10 years or 120 months. But that does not mean that the plea agreement was involuntary. There was, in fact, consideration because defendant had the opportunity to seek a lesser sentence, and there was no question that defendant understood. If I just may quote a couple things here. With respect to defendant's English-speaking ability, his counsel made several representations during the change of plea hearing that he had gone over with a translator. Defendant did not need a translator that he understood. Then the following colloquy occurred before the district judge or before the magistrate judge at the time of the plea. The court, Mr. Ulibas, at any time, if you do not understand anything that I say or if you have any questions with regard to any of the words that I am using, will you ask the interpreter or will you tell me? The defendant, yes, Your Honor. Several minutes later, the court, have you signed the form entitled consent? I'm sorry, if I may, it started off earlier on. The court, well, Mr. Ulibas, we have an interpreter here for you this afternoon to proceed with a change of plea if it is your desire to change your plea in this case. Do you understand that? The defendant, yes, Your Honor. The court, do you understand everything that I've said so far? The defendant, yes, Your Honor. The court, then several minutes later, the court, to make sure that you understand, I'm going to ask you questions. If you do not understand the questions or any words that I use, will you please say so? The defendant, yes, Your Honor. And then finally, as I said earlier, several minutes later, Mr. Ulibas, at any time, if you do not understand anything that I say or if you have any questions with regard to any of the words that I am using, will you ask the interpreter or will you tell me? The defendant, yes, Your Honor. And then later on, Your Honor, during the course of the plea, the court asked the prosecution to make a written proffer, to make a verbal proffer of the proof. And defendant agreed. After the proffer was made, the court turned to the defendant and said, do you agree with that? The defendant said, yes, except for one thing, I agree with everything else. In short, he showed that he comprehended English well enough to be able to enter a voluntary plea in this particular case. At all times, there was an interpreter standing by, but at all times, the defendant never used him. And there was a logic progression. The court asked questions, the defendant logically responded. There was never any need in the change of plea hearing for the defendant to repeat him, for the court to repeat himself, for the defendant to be understood. Lastly, there is the point that the defendant makes about the question of the change in Rule 11 with respect to advising the defendant of the appellate waiver provision. Well, the way the court did that in this particular case is the magistrate judge asked the prosecutor to make a, or to explain the terms of the plea agreement. And in this particular case, that was done. And during the argument, or during the recitation of the plea, there was also an explanation of the appellate waiver provision. And this is at Executive Records 41 to 42. And I quote, the prosecutor said in this case, defendant normally would have the right to appeal his sentence in this particular case. However, as part of the plea agreement, defendant gives up or waives this right to appeal, except in two limited instances. The first being if ineffective assistance of counsel was involved in defendant's sentence. The second being if the court departs upward in sentencing the defendant above the guideline sentencing range. And that limited exception would apply to permit the appeal of that portion of the sentence in excess of the guideline sentencing range. The same appellate waiver also applies to defendant's right, or defendant also waives the right along the same lines to file for habeas corpus or 2255 collateral relief after his conviction. The court then says, does that accurately state your agreement with the government, the defendant? Yes, Your Honor. I would submit, Your Honor, that there was no question at the time, at the time of the Rule 11, the change of plea, about the appellate waiver provision. Defendant knew about it. He affirmed to the court, too, that he had read it beforehand. There was, in fact, compliance with the requirements of Rule 11 that the court advise the defendant of the appellate waiver provision. I would point out, too, that this is here on plain error review. There is no claim made by the defendant of any lack of real lack of understanding. There is no real prejudice, I would submit, in this particular case. And, therefore, there was not really, or this should not be reversed on this particular point on plain error review. The last point I make is defendant claims to want to preserve this right to appeal the pretrial suppression motion. This unconditional plea that was entered will not allow that. That should have been done in a conditional plea. That is not before this Court. Therefore, it was waived, that the right to appeal the pretrial suppression ruling was waived by entry of his plea in this case. All right. Thank you. If you'll use your time, we'll give you a minute for the following debate. Thank you, Your Honors. Briefly, just on the Rule 11, it does require that the judge actually personally ask the defendant, does he understand. In this particular, what Mr. Kawahara was reading was what he was reading to the court. And the court just said, do you understand? But it's up to the court itself to ask more specific questions about, do you really understand what you're giving up and about your waiver of appeal rights? Do you agree it's a plain error review? I agree it's a plain error review, yes. So, you know, you say there's an error, and it's plain, and it affects the integrity of the proceedings. I mean, it goes right to the heart of what was going on there that day. I agree, Your Honor, because he's giving up a lot by going with this particular plea agreement. But the prosecutor has just explained the plea waiver, and the judge says, is that explanation correct? And the defendant says, yes. I don't think so, Your Honor, because I think it's more if you are asking a specific question, because I don't believe that Mr. Uloves really did understand English, because what he was reading, he answered, yes, Your Honor, yes, Your Honor, yes, Your Honor. But if you'll look back in my brief to see the few times that he actually spoke other words other than yes, Your Honor, you'll see that his command of the English language is not very great. In fact, at the end of the sentencing hearing, his own attorney said, Your Honor, I think that Mr. Uloves does have some problems. He might have some learning disabilities. So it was at that point where he asked for actually some help and some counseling for him when he was in prison. All right. So I think, but. Thank you. Thank you, Your Honor. The case just argued will be submitted. Thank you. Thank you.
judges: Leavy, Rymer, Tg Nelson